at all. Thank you. Good morning, Your Honors. May it please the Court. My name is George Chalice and I represent the plaintiff with L.E. Ironshore in its own right and I'm the NSRB of Boston Ship Repair, Northeast Ship Repair. With the Court's indulgence, I'd like to reserve 90 seconds for rebuttal. 90 seconds? Okay. Thank you. Your Honor, this is an interesting case that brings us here. It's an oil spill that occurs in July 2014 where 11,000 gallons of diesel was overflowed from a vent tank on a vessel known as the Fisher. At the time, the vessel was at the Boston Ship Repair dry dock, undergoing repairs that were completely unrelated to the spill. In fact, our clients were an innocent victim of the set of circumstances. They had nothing to do either with the cause of the spill or fault for the spill. But yet they were caused to suffer damages, great damages, nearly $3 million in counting as the matter continues to be properly dealt with by the insurers. But the claim that brought us to the District Court here in Boston was a claim for not just damages in the traditional sense, but really it was an equitable claim looking for reimbursement of what we were and to put it bluntly, clean up the government's mess. Now, neither the government, the owner of the ship, nor AMC, the private company that was contracted to operate the vessel, responded to the spill. They didn't pay compensation. They just left their mess keeping their mouths and eyes closed of what was happening in the shipyard. And what's amazing about this is that this was despite knowing that they caused the spill, despite knowing that they were at fault for the spill, that they were the responsible party for the spill, and they had been notified through the applicable notification channels because the gist of oil spill response is notifying the authorities to coordinate a prompt response. I assume when the spill occurred that there was immediate notice that there was a spill. There was. It's undisputed. And under that, the responsible parties are supposed to respond immediately, as I understand it. That's correct, Your Honor. And as I also understand, at no time did the then contractors for the government or the government respond in any manner. Correct? That's correct, Your Honor. That's the egregious facts of this case. Now, the issue that brings us before this court is actually quite narrow, and it's a question of first impression. And I'll say it in one sentence if I can. What is the scope of responsibility for a ship source spill response and for payment of damages and removal costs when the ship source spill comes from a government-owned vessel that's operated by a non-government company employing a non-government company? Well, it's pretty straightforward stuff. There's 10 facts in this case that are not in dispute. I'll run through them quickly, if I may. 11,000-plus gallons of diesel spilled from the vessel. It was due to the acts or omissions of AMC civilian crew unrelated to the work being performed by the shipyard. The shipyard had nothing to do with the spill. At least $2.8 million and counting was encouraged to remove oil and other damages. The vessel was owned by the government. The vessel was operated by a private company with civilian crew. Neither the government nor AMC responded. Counsel, I understand these facts are important, but the issue that comes before us, at least as framed by the district court, is a very narrow legal issue. Now, you, in arguing that the district court got it wrong, you make this further argument that because the district court got it wrong, there is no remedy available to your client against the government. They can just walk away in an egregious manner, and they say that's far from the case, that you apparently have made litigation choices which may put your client in a difficult position, but there are other statutes available, maybe not quite as favorable, maybe not involved in strict liability, but there are other avenues available to obtain a remedy. So I'm not sure how it's so helpful to you to portray this in this sort of very unflattering factual light. It's a very narrow legal issue that you should be focusing on. Well, Your Honor, actually, I think that you've hit the nail on the head with the issue that the district court did get it wrong, and what the district court got wrong was finding that OPA, the Oil Pollution Act of 1990, first off applied in this case, and then going one step further by finding that its preemption was somehow justification for dismissing the general maritime law negligence claim, which, by the way, the government concedes was probably before the district court.  Right, but the district court dismissed that case. No, I understand, but I'm saying if the preemption issue stands in the way of your admiralty and state law negligence claims, right? The government says it's a mistake to think that OPA itself preempts the claim against the government. Correct. Okay, so if we take that as true, then there's recourse, assuming that you haven't forfeited away with that claim as they contend you have, but that's not a global point, that's a specific to this case point, so there would be a remedy for an actor such as yours. You're also trying to supervention under the OPA itself? Right. And that turns on whether this is a public vessel? You got it right. Okay, so why is this not a public vessel? Okay. Because you don't have that much time left and there's a lot of different moving parts here, so if you could just get into why is this not a public vessel so we can take care of your argument on the OPA claim first. Right, so in order to meet the definition of a public vessel, it's a conjunctive two-part test. The vessel has to be owned and, I underline the word and, operated by the government. And the term operator is a specific term in the world of maritime law. In fact, there's a site, 33 U.S. Code 1901, Section A9A, which defines the exact term of an operator. And, frankly, AMSI is the operator. So now, with the government and what AMSI said is, well, yeah, right, we are private and we do have civilians on there, but actually, we are a government agent. But yet, we contracted with a 250-plus page contract. Not once did it say that AMSI was acting as a government contract. Why does that matter? Well, I mean, it's a notice issue for sure, but maybe that's some issue you have with AMSI as to that contract. Why does that matter for whether you can get liability under OPA? I don't understand how that affects whether it's a public vessel. Well, it's a fact, and that's what we're saying in the court. But why is it a relevant fact to whether it's a public vessel? If it is a public vessel or it isn't, if it's a warship or a military vehicle, clearly AMSI in operating it in many, many, many circumstances is operating it for the government at their direction. That seems incontestable. Well, it may be correct, Your Honor, but here we have a contract to do repairs when the ship wasn't doing wartime activities nor Navy exercises. What authority suggests to determine whether something is a public vessel? We're supposed to look at each particular moment of its life. At that moment, is it being operated by somebody acting in an agency relationship as opposed to whether just in general the vessel is a public one? Because this one seems hard to see how it's not in general. Right, I understand that. But the problem is this, that if the ship was on the high seas and doing a naval mission, I would agree with the court. It shifts from being a public vessel to not being a public vessel depending on the activity? Well, it's a fact question. My point is it's a fact question. But your position is that under the statute, a vessel can lose its public quality depending on the activity it's engaged in? No, I don't think that that's a correct statement of my argument. My argument is here that the court made a factual finding well in advance of allowing this to develop. Judge Sobel said, well, look, it looks like a naval vessel. Well, she didn't. We should talk about this because you have a problem with what she did. She looked at contract language. And looking at that contract language, which makes clear that the government retains overall operational control of this vessel, not surprising since this is not a commercial enterprise. This is a military vessel serving a military purpose. And so naturally the government wants to retain overall operational control. And on the basis of that contract language, she says the conjunctive language of the statute applies. I understand that. But my problem is much more narrow than that. My problem here is that we're making a factual determination when there's conflicting facts. AMC contracted with our client in their own right. AMC agreed a arbitration clause, which if they were an agent for the government, the government can't arbitrate. They have to be sued under the Suits and Admiralty or the Public Vessels Act. They've gone on to – Well, how does that, I guess, subcontract as you describe it, how does that – I guess this is just a repeated Judge Barron's question, but how does that affect the relationship between the United States and AMC, which is controlled by this large 600-page contract? I mean, how does – I don't understand how that subcontract affects the issue that we're looking at here. Well, it affects the issue in the sense that they've gone out and represented themselves as a private entity, engaging another private entity to perform certain professional services with a 250-page-plus clear-as-crystal contract, wherein private remedies and private law and jurisdiction clauses were inserted. Now, had they had a different remedy in there, had they said, oh, we're agents for the government, and any breach of contract, your contract partner will be the government, I probably would have a different view of the story. But when you have an entity coming into our client's office and saying, we'd like you to do some work for us, and here's the terms in which we are engaging you, and by the way, if you have a problem, your recourse is with us, that, to me, doesn't meet the two-pronged conjunctive test, because the vessel wasn't operated by the government. Now, to later learn that the position of this private entity and the government is, oh, yeah, but they were our agent, well, why are we here then? The government should have conceded at the district court level that, as they did concede, that the general maritime negligence claim should have gone forward and the case should have proceeded in the normal course, not on strict liability, but where the government would accept the acts and omissions of their agents. Well, they did concede that point. I mean, the district court was sort of on its own, well, I guess in response to the motion of AMC, but the government conceded that the general maritime law applied. But, Judge Lucas, there's another point here that's really important to bear in mind. The Oil Pollution Act of 1990 was an important piece of legislation because all the other legislation was insufficient prior to the Valdez bill, and so they put this very narrowly worded, very precisely worded definition of public vessel in the statute, which isn't met here, it just isn't met. I still don't understand your argument for why it's not met. I just don't hear it. I mean, I guess you're not... Well, the only way you get to it being met is the government and its contractors saying, yeah, but we're just agents. But that's not how it represents the relationship to the world. It wasn't how it was representing... I mean, is this apparent authority? Is this actual authority? What's the scope of the authority that we're talking about? But the OPA also goes on, and it's very important to bear in mind, that Section 2714... So your contention is that in order to be able to raise the public vessel exception as a defense to a suit, you have to have manifest your agency relationship. If the theory of OPA liability being exempted is that you're an agent of the government, is that the idea? Because I didn't see that argument. I would come up shorter than that. I wouldn't say that you have to manifest your agency relationship. What I have to say is you cannot mislead as to your relationship. And here, when you come in and contract in a private manner with a private company, with private dispute resolution clauses, that doesn't suggest that AMC was at all an agent for any other principle. They were the operator of the ship. So that's the problem with that argument. So you're saying we're not supposed to look at it objectively, whether in fact it's an agent. We're supposed to look at it from the perspective of the person that the agent's contracting with. Well, I don't think I'm saying quite that either. What I'm saying is it's a question of fact that the district court prematurely decided. What's the fact question? What is this agency? In the abstract? Because it decided that question on the basis of the contract that AMC had with the government. Right. I understand. So you seem to be saying even if that's true, you still can win. And I'm trying to figure out why that could be. And I'm not quite hearing it. Maybe I'm not sure I understand the question. There's a contract that says AMC has a certain relationship with the government. The district court found that that contract shows it was an agency relationship. You don't seem to be disputing that. You seem to be saying AMC didn't make that clear to your client when they went in for the repairs. What we're asking is why does it matter what AMC represented to your client if the contract AMC has with the government shows it was an agent of the government? I'm not saying they didn't make it clear. I'm not saying that there was a confusion or a mistake. What I'm saying is that the affirmative representations were to the contrary, that AMC was the operator. That's what's in our repair contract. AMC is the operator. That's how they define themselves. I am the operator of the ship. And so, therefore, when you look at OPA and you give it a plain meaning, you interpret the statute according to its plain meaning, if you look at it and it says I'm the operator of the ship, and it says, well, the government has to be the owner and operator, it doesn't match. Could I ask you to use your 90 seconds? I'd like you to explain to us. I know you object to consideration by the district court of the contract at all. You think that was unfair that it converted without notice, I guess, a motion to dismiss into summary trial. I want to understand what is unfair about what would happen during discovery that might allow you to in some way challenge the contractual provisions that were the basis of the district court's decision. Why don't you respond to that as part of your rebuttal? I don't mind if he does it. Okay. Well, look, if we had gotten the contract as part of the discovery package, first off, we would have been able to make argument on the select sound bites that were taken out by the government and embassy and perhaps challenge the context. More important than that, because the contract says, oh, we're an agent, without defining it further, there are factual discrepancies, which we would have probed through depositions, just because they say they're an agent. But what is really the agency in real life? How is this functioning on the ship? We know there was no government people, no naval people, that were turning the valves that caused this oil spill. This was something that was discretionary by the embassy personnel on board the ship that were there performing other repairs. That's the point that we would have tried to put forward. Are you saying you did not have any notice of these contract provisions until you read about them in the district court's decision? A hundred percent, Your Honor. And to go one step further, the government never took the position that this was a public vessel until well after the fact, because the OPA, Section 2714 subsection C, has a publication requirement. Had the government thought of that argument before, had the government really taken that position from the time of the spill, the president was obliged to give notice and publish a claims process whereby the claim would be presented to the federal government for review and satisfaction. They didn't do that. And the reason why they didn't do it is because it wasn't a public vessel in their mind. You saw the IMC case from the Southern District of Texas where Judge Rosenthal flagged up the question about, is a government-owned ship that's operated by a private contractor a public vessel or not? In that case, the Coast Guard said no, but the Navy said yes. And Judge Rosenthal said, hey, I'm not going to decide this question. This issue, 20 years later, 22 years later, still alive and well, it comes to this court. This needs to be resolved. Okay. We'll do 90 seconds after. Did you have a question? No. Okay.  Thank you. Good morning, Your Honors. May it please the Court. My name is Tom Musica, and Olaf Apprens and I represent AMC in this matter. My brother made a statement earlier today that the first time he knew about the contract between AMC and MSC, or the United States, was at the time of the decision. That's not totally true. In our initial disclosures in this case, we identified the contract. And I believe, and I don't have the exact number, I think it's paragraph 54, where we identified the contract itself. In addition, when we filed our motion to dismiss, we annexed certain excerpts to that motion through the affidavit of Mr. Campbell so that they were identified in specific reference that was made to them. But isn't it accurate that at no time did he get the full contract, and certainly in the beginning he was unaware of the contract? He was aware of the contract from the time we made our initial disclosure. The excerpts from what we argued in our motion was through the affidavit at the time of filing the motion to dismiss. You made choices on what you applied to your filing. In other words, you didn't make the full contract available at that point. That's correct. It's a huge contract, page-wise. I'm sure it is, given the nature of the beast that we're working with. Okay. Well, addressing the OPA claims, the complaint that was filed by my brother, they had an opportunity under OPA to do one of two things. They could have either gone to the trust fund and sought payment under the trust fund if this oil spill was not covered by a public vessel, or they could choose litigation. And in this case, I, in short, chose to pursue litigation rather than going through the trust fund. Spills from public vessels that occur are paid through the trust fund, just like foreign government vessels that have spills and have sovereign immunity under the statute also make payments through the trust fund. Well, how does one, the innocent party, know if the government doesn't say when the spill occurred, by the way, your recourse is to the trust fund? And so, obviously, at some point, because they responded to the spill, they cleaned the spill up, and no one comes forward. Well, you do what you usually do. You go to court to get some relief. Is there no obligation on the part of the government in a situation like this? You may be the wrong person to ask to make it clear as to what is the proper way to get recompense for taking care of a problem, which your client probably should have done in the first instance, and certainly the government, because your client is, if you can accept the government's argument of what this ship was, was responsible for the spill. Well, Your Honor, in the first instance, there are two responsible, there's a responsible party from the shipyard. The person ship repair is identified as a responsible party under the statute. Simply because it's on their property. It's because they have a threat of spill through unavoidable waters. So they immediately took control. The vessel also notified the National Contingency Response Team of the oil spill, and we stood by. So we didn't stand, as my brother suggests, that we stood back and did nothing. We were watching because the shipyard had taken control. They had hired a control company to clean it up, and we were not going to interfere with their handling of the cleanup spill. So it's not totally that we walked away from it with no responsibility. With respect to OPA 90, in this case, as the court has pointed out, the only issue was AMC, a private company. An operator in this case, and it wasn't. If you look at the contract between MSC and AMC, you can think that way too. I get the point, but the thing that's just, I don't know if this matters, but I guess the force of the argument on the other side is that if I'm doing business with a contractor for the government, I have no way of knowing that that contractor with the government, in fact, is a contractor with the government. This is their contention. And so it turns out I'm dealing with somebody who's got this immunity from liability when all the representations about the person I'm dealing with are to the contrary and suggest that there is no reason for you to think that there's this immunity. And that puts this, but maybe if they knew I walk in here, I'm the government, and I have immunity, maybe the shipyard says, you know what, I'd rather not have your business. But there's no way they can make that judgment in the way that this is breaking out because they don't have access to the contract between AMC and the government. So what's your response to that? In response to that, Your Honor, when you look at the subcontract between AMC and the shipyard, in that contract there are two prominent parties named, AMC and the United States of America. It's identified in that contract that AMC is operating the vessel for MSC, that the United States is named as an additional assured, it's named in the waiver of subrogation in the claim, it's required to be named as an additional assured on policies, and the other thing is, Your Honor, USNS on the ship says United States Naval Ship. So why would you have arbitration? You think that's a clue? It might be. Why would you have arbitration language in the contract then? There was an arbitration language in the contract that was non-compulsory and before this litigation was started, I am sure, waived the arbitration. So it's really not an issue before the court. That's why we're in litigation. As far as the operation, as the cases which we have cited addressing the Public Vessels Act and the Suits and Admonty Act, the government is allowed to delegate certain portions of the operation of vessels to private parties and in those cases they all hold that the operator is an agent of the United States and that it is analogous to the OBRA statute. It should be noted with regard to OBRA that there is a right to go to the trust fund to collect for an oil spill cost. Can I ask you how this works? So the government takes a position different than you or different than district court with respect to whether OBRA preempts the admonty claim? That's correct. Okay. You take the position, if I understood it right, maybe this is, I'm confused, that the iron sword failed to make an argument as to why it was not preempted by OBRA, by the admonty. Is that right? Or is your claim, why do you conclude that the non-OBRA suit can't go against you? Okay. You can't take time. Because we say OBRA supplants. I understand. And if the government says they disagree, so we agree with the government on that. Is there a reason why they can't still sue AMC on a non-OBRA basis? Yes, because under the Suits and Admonty Act, Your Honor, as we're an agent of the United States, the exclusivity provision says that they have to sue the United States. So AMC would be out of this case if the court finds that there is a general maritime law cause of action available, but only against the United States. And as to the state negligence claim, you say? Excuse me? As to the Massachusetts state negligence claim, the non-admonty claim, you say what? Well, first off, the government hasn't raised sovereign immunity to that, since the United States would be the direct party. And we cited a case in our brief in the First Circuit for that. And secondly, it hasn't been raised in the pleadings. If you look at the pleadings, there's a 1331 claim which goes to OPA 90, and then there's a 28 U.S. Code 1333 claim, which is admonty jurisdiction, with the election by Ironshore to proceed under 98 Federal Rules of Civil Procedure, which makes it a maritime, an admonty maritime claim, which applies general maritime law. So if you look at the four corners of the complaint, as it is pled, the negligence claim can only be negligence under general maritime law. The claim, Ironshore has dubbed the general maritime claim throughout the argument of the lower court, on appeal here and in their briefs. They raise that they have a Massachusetts state court of action, but in the complaint, there is no diversity of citizenship or penitentiary jurisdiction alleged, so there's no basis that the court below could address a state court remedy. Thank you. Thank you, Your Honor. May it please the Court, Anne Murphy for the United States. To get to the peculiarly governmental issues here, the trust fund and the Coast Guard did not issue a notice advertising how to make claims against the fund, but that does not suggest that the answer in this case is that the vessel is not a boat, but a public vessel. This is an issue in a footnote in Ironshore's brief, and the issue that the court decided was, quite correctly, is this a public vessel for purposes of the OPA? And as you know, we agree with AMC that the Fisher was a public vessel, and we disagree with AMC that the maritime law claims are preempted by the statute. So those are really the key points that I think Your Honors understand very well. But you still think the admiralty claim can't go against you because it was waived? Well, we think there's a fair argument that at this juncture, the only clearly articulated claim has been a state law negligence claim, which would not be. Now, AMC was just telling us that the only clear thing that was before us was the admiralty claim. Your Honors, we also understand this is an issue for the discretion of this court, since it's a question of what you think is properly before you. So our position is that to the extent it's just a state law claim, and you conclude from the record that that's what they've raised, that there should be no remand. But on the other hand, Your Honors might decipher it. Because the position of the insurer is this is another instance where they were treated very unfairly by the district court. Not only did the district court consider documents that were not properly before it, but sua sponte it addressed their negligence claim, which they didn't even understand was before the court. Is that wrong? Were they not treated unfairly in that way? I wouldn't say necessarily unfairly, but we were thinking more of when they came to this court, they had an obligation to explain to the court what their claims are. Because by the time they got to this court, I think it's fair to say some degree of confusion about who was claiming what and what the nature of their claim was. It seemed like a reasonable reading in the district court held that their negligence claim was some kind of Massachusetts claim. Well, we made a negligence claim without specifying whether it's a general maritime claim or a Massachusetts claim. I think that's what they say. Right. And your Honor, as I say, you have discretion. You might very well conclude that the claim is before you. And if we do make that decision that the claim is still alive and that it is before us, they would have some ability to get recompense for their stepping to the plate and cleaning up the government. If we agree with you that it's a government vessel, the government spill. That's correct. It's the government's position that, in theory, the Oil Pollution Act does not preempt the general maritime law claim for negligence when it's a public vessel. And as I say, we believe it's a public vessel. Is there a case law on that preemption point? On? The preemption point. The one about the OPA preemption of the public vessel? Um. Can I assume any case law that the right is the general maritime? Either. The government, they take the position that the district court took the position that OPA preempts the general maritime. Correct. Yeah. You take the position it does not. Correct. Is there a case law that would help me figure out who was right on that? What is the case that. Well, the case that the district court cited was a case out of UCOG, Southport Marine, that addressed. It had some somewhat broad. What supports the government's position that OPA does not preempt an admiralty action against the government? The clearest authority, Your Honor, is the statute itself. Is there any case law beyond the reading of the statute that the government is relying on for that proposition? I think the statute is sufficient. I mean, there are cases that we cite in our brief. The Deepwater Horizon case went to that. I'm sure there's others, but it seems that the statute itself is extremely clear. It says it doesn't apply to discharges from public vessels, and it says except as otherwise provided in this act, then you would retain the general maritime law claim. I hope that's a sufficient answer. I just had a couple of cleaning up points. The definition of operator in 33 U.S.C. 1901 doesn't actually apply. That applies to Chapter 33, and OPA is Chapter 40. So under OPA, you have the owner and operator defined as owner and operator. And I also think it's quite important for this case that MC can be an operator and the United States can be an operator and the vessel can still be a public vessel. So to the extent that there's an issue about the definition of operator, I don't think it's relevant here. Just as a matter of education for me, when a vessel like this is brought into a shipyard for repair and a contract is made with the shipyard, does the United States make the contract or does the operator make the contract? And is there anything in the contract which indicates that this is a government ship and therefore different rules would apply? I think the answer to that will depend on the contract between the government and the military contract and what authority the military contractor is given to contract on behalf of the vessel or for repairs. So we did put in a big chunk of the contract between MC and the government that showed that MC had authority to contract on the government's behalf, but there were limitations and it had to put in certain clauses and it had to get specific authorization for certain expenditures. And I think the idea that a subcontract for a vessel that's a naval vessel and is clearly a naval vessel, they must have known it was a military vessel and a military contractor. Does that matter though? No. It doesn't matter? Not for the OPA question. The way the government's understanding of how OPA works, if I had a vessel that gave no indication on its face that it was a government vessel and the person doing the contracting with the shipyard was a private party who in writing the contract with the shipyard made no reference to the government's involvement. Right. But in fact, on the side, had a contract with the government been made clear it was an operator for the government, it would still be a public vessel. It would still be a public vessel. Right. That subcontract is not relevant to the OPA question here. Counsel, under the contract with the government, I gather this embassy was required to maintain the ship in a certain way in order to allow it to fulfill its military mission. Is that correct? That's correct. And in deciding to take the ship in the dry dock to have these repairs done, would it have to get the approval of the government in order to obtain repairs and make the financial commitment? So the contract says it's very specific about which kinds of repairs an embassy can contract for without further intervention with the government and which it has to ask the government specifically about. My understanding is that there's a fairly robust ongoing communication on these contracts anyway. But the contract language actually tells ANSI which things it can do by itself and which things it has to do with further government. Am I right that to the extent the contract tells a contractor that it can do certain things by itself, that's not relevant to the determination of whether it's a public vessel so long as there are other features of the contract? Correct. I mean, if ANSI can go and purchase, you know, 12 yards of rope by itself, that doesn't make it not an operation of the vessel on behalf of the government. But I guess what I'm, I understand it certainly couldn't make it for all purposes. But would it make it not a public vessel for purposes of purchasing the rope? No, I don't, no. So how do we then think about it? We think about it, if you're a public vessel for any purpose, you're a public vessel for all purposes? If you're a public vessel under OPA, you're a public vessel under OPA. I'm sorry, if you're an operator for any purpose, are you a public vessel for all purposes, even those in which you're not operating it for the government? If you're an operator for any purpose? You were just giving me an example of buying the rope. Right, so if the contract says... You have total discretion to do buying the rope on your own. You do whatever you want in that regard. Right, so the contract says, MC says, we're going to operate this vessel for the government. The government says, that's great. And here are some big-ticket things that you need to get our permission and we want these clauses. But it would be incredibly inefficient if every time you wanted to do a purchase order or buy food for the crew, we had to do that. So having that kind of discretion does not affect the agency relationship or the fact that it's an operation. Right, so what are we supposed to look at to determine the agency relationship that matters? What is the critical thing to look at? Well, under the public vessel act, it's overall operation and control. Overall is the word? Yes, and is the vessel still serving a public purpose and is it under the operational control of the government? So this vessel... In a general sense is the idea? Yes, yes. I mean, this vessel is a military supply vessel. MC is repairing it so that it can be fit for its deployments. I mean, it seems to us there's no question that this is a public vessel. Thank you. Your Honor, when a public vessel has an oil spill, there's a publication requirement that's mandatory and it's purposeful. There was no publication. There was no claim notification. That's because this vessel wasn't considered a public vessel at the time. This is a legal theory that's been brought ex post facto. Now, MC moved in this case. They said, oh, but we're only an agent. Let us out. And the government joined to a limited extent, agreeing that, yes, that they were an agent of this ship. Of course, they never moved to dismiss the maritime claims. And Your Honor will find that page 160 of the record on appeal, Assistant U.S. Attorney Sullivan tells Judge Sobel, the United States should be the only named defendant in this case under the Suits and Amnesty Act exclusivity provision. Moving on, though, the judge cut her off. Said, it should be the only one? And AUSA Sullivan continued, the United States should be the only named defendant in this case, Your Honor. MC should be dismissed as a defendant in this case under that provision of the Suits and Amnesty Act. So what's amazing, though, is in the course of the last 18 months, never has the government come to us, even with the First Circuit Mandatory Mediation Program, said, look, let's stay the litigation and come to the front. Now, they've done that purposely, because you saw the IMC case. They said, well, you're a responsible party, but yet it was a contractual arrangement with the spiller, and therefore you don't qualify for reimbursement. The only recourse is in this court. And we say that there's questions of facts that are outstanding with respect to this agency argument, with respect to the applicability of OPA, but at a very minimum, it should be undisputed that this negligence case goes forward. Now, Your Honor, if this court does... Just take 10 seconds to finish this thought. The court doesn't overturn the decision. We're setting a very dangerous precedent. OPA was enacted to ensure a prompt response, but allowing a private party to pollute and not having any consequences is completely contrary. Thank you very much.